**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT A. WATT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX CORPORATION, FEDEX CORPORATION EMPLOYEES' PENSION PLAN, RETIREMENT PLAN INVESTMENT BOARD OF FEDEX CORPORATION, and JOHN/JANE DOES 1–10,<br><br>Defendants. | ) | No. 2:23-cv-02593-TLP-atc |

## ORDER DENYING RENEWED MOTION TO DISMISS

Plaintiffs are former pilots who worked for the Federal Express Corporation ("FedEx") and now bring this class action based on the Employee Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 1 at PageID 3.) To challenge their allegedly scarce retirement benefits, they sued FedEx, the FedEx Employees' Pension Plan ("Plan"), the Retirement Plan Investment Board of FedEx ("Investment Board"), and the Investment Board's individual members. (*Id.*)

In November 2023, Plaintiffs amended their complaint. (ECF No. 33.) There, they pressed an ERISA claim based on Defendants' alleged violation of ERISA's "actuarial equivalence requirements," codified at 29 U.S.C. § 1055(d). (*Id.* at PageID 165, 192, 195–96.) And they accused Defendants of breaching their fiduciary duties to Plaintiffs by using formulas that "do not provide actuarially equivalent benefits." (*Id.* at PageID 196–200.)

The Court later granted Defendants' Motion to Dismiss because Plaintiffs failed to allege a violation of ERISA's actuarial equivalence requirement. (ECF No. 66 at PageID 870, 876.) Plaintiffs timely appealed. (ECF No. 68 at PageID 879.) And on March 16, 2026, the Sixth Circuit reversed the Court's Judgment. (ECF No. 72 at PageID 909.)

The majority held that § 1055(d) in fact "prohibits employers from using unreasonable, inappropriate actuarial assumptions" to calculate qualified joint and survivor annuities.[1] *Reichert v. Kellogg Co.*, 170 F.4th 473, 487 (6th Cir. 2026). But it declined to address FedEx's "two additional grounds for dismissal" because this Court's Order Granting Defendants' Motion to Dismiss had not considered those issues. *Id.* at 487–88; *see also Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 648 (6th Cir. 1996) ("In general, an appellate court will not address issues on appeal that were not ruled upon below.").

On remand, this Court must now "address these issues in the first instance." *Reichert*, 170 F.4th at 488. Before doing so, the Court discusses ERISA's statutory framework, largely as the Sixth Circuit explained it in *Reichert*. The Court then recounts well-pleaded factual allegations in Plaintiffs' Amended Complaint. (ECF No. 33.) And after addressing this litigation's procedural history, the Court explains why it denies Defendants' Motion.

## BACKGROUND

### I. ERISA's Statutory Framework

The Court first introduces ERISA and the "actuarial equivalence requirement" as they relate to benefit plans. *See Reichert*, 170 F.4th at 475. Congress designed ERISA "to ensure the proper administration of pension and welfare plans, both during the years of the employee's active service and in his or her retirement years." *Boggs v. Boggs*, 520 U.S. 833, 839 (1997).

[1] The Court explains each relevant defined pension benefit below.

While ERISA does not require employers to provide benefit plans or prescribe the "kind of benefits employers must provide," it helps to ensure that employees are not left "empty-handed" once employers guarantee them benefits under a plan. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). Indeed, "[a]ll employee benefit plans must conform to various reporting, disclosure, and fiduciary requirements," "while pension plans must also comply with participation, vesting, and funding requirements." *Boggs*, 520 U.S. at 841.

A "defined benefit plan" is one such type of "traditional, private pension plan[]." *Reichert*, 170 F.4th at 476. Under ERISA, it must guarantee certain pension benefits to participants upon their retirement. *Id.* Specifically, ERISA requires an employer who has promised a defined pension benefit to an employee to "adhere to specific vesting requirements and timely pay the promised, vested benefit to the employee." *Id.*; *see also* 29 U.S.C. § 1053 (setting requirements for private pension plans).

Depending on whether an employee is single or married, he or she may qualify for different kinds of defined pension benefits.[2] These benefits share a common core: an "annuity," which is a contract that provides a "fixed monthly payment." *See Reichert*, 170 F.4th at 477.

The first type of benefit is straightforward. ERISA requires pension plans to offer unmarried participants single life annuities ("SLAs"), which provide a defined benefit payment for the participant's life. *See Esden v. Bank of Bos.*, 229 F.3d 154, 159 (2d Cir. 2000).

The statute also requires pension plans to allow married participants to elect to receive

[2] The Court recognizes that, under ERISA, the terms "employee" and "participant" are not always interchangeable. *See Heisler v. Jeep Corp.-UAW Ret. Income Plan*, 807 F.2d 505, 507–08 (6th Cir. 1986). An "employee" is "any individual employed by an employer." 29 U.S.C. § 1002(6). And a "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members or such organization." *Id.* § 1002(7).

joint and survivor annuities ("JSAs"); these provide a participant with benefits and, if he or she dies, provides his or her surviving spouse benefits. *See Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 539 (6th Cir. 2003). But in ERISA, Congress specified the kinds of JSAs that plans must offer. *See* 29 U.S.C. § 1055(a), (d).

One type of JSA is the qualified joint and survivor annuity ("QJSA"). *See id.*; *see also Drummond v. S. Co. Servs., Inc.*, 177 F.4th 1076, 1083 (11th Cir. 2026) ("A joint-and-survivor annuity that meets ERISA's requirements is a 'qualified' joint-and-survivor annuity." (citing 29 U.S.C. § 1055(d))). "[I]n the case of a vested participant who does not die before the annuity starting date, the accrued benefit payable to such participant shall be provided in the form of a [QJSA]." 29 U.S.C. § 1055(a)(1). A QJSA is an "annuity" "for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of (and is not greater than 100 percent of) the amount of the annuity which is payable during the joint lives of the participant and the spouse." *Id.* § 1055(d)(1)(A).

Breaking this definition down, a QJSA features two components: the "annuity" for the participant while the participant and his or her spouse are alive ("joint lives component"), and the "survivor annuity" after the participant's passing for his or her surviving spouse ("survivor annuity component"). *See id.* Payment of the joint lives component "start[s] at the participant's retirement and continu[es] through the 'joint' lives of the participant and his or her spouse." *Reichert*, 170 F.4th at 477. And the value of the survivor annuity component must be "not less than 50 percent of" (and "not greater than 100 percent of") the joint lives component. *Id.* (citation modified); *see also Boggs*, 520 U.S. at 842 ("ERISA requires that every [QJSA] include an annuity payable to a nonparticipant surviving spouse.").

The QJSA is the "default benefit option for a married participant." *Reichert*, 170 F.4th at

477. But under § 1055, employers must allow a participant to waive the QJSA with his or her spouse's consent. *Id.* And the plan must then offer a qualified optional survivor annuity ("QOSA") as an alternative. *Id.* QOSAs are like QJSAs, but plan administrators must calculate QOSAs' survivor annuity components differently than QJSAs' survivor annuity components. *Id.*; *see also* 29 U.S.C. § 1055(d)(2)(A).

ERISA also requires defined benefit plans to offer a qualified pre-retirement survivor annuity ("QPSA"). 29 U.S.C. § 1055(a)(2). "[I]n the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a [QPSA] shall be provided to the surviving spouse of such participant." *Id.*

Contrasting QPSAs with JSAs helps explain the former. A JSA "pays a beneficiary spouse a survivor annuity if the participant dies *after* the participant retires," while a QPSA "starts payments to the spouse if the participant dies *before* retiring." *Drummond*, 177 F.4th at 1083 (emphases in original). A benefit is a QPSA if its "payments to the surviving spouse" are not less than the survivor annuity component of the QJSA the spouse would have received—but the statute specifies two cases related to this determination. *Id.* § 1055(e)(1)(A); *see also* *Drummond*, 177 F.4th at 1083.

The first case is when a participant dies "after" attaining the earliest retirement age[3] but without having retired. *See* 29 U.S.C. § 1055(e)(1)(A)(i); *see also Drummond*, 177 F.4th at 1083

[3] "[E]arliest retirement age" means the "earliest date on which, under the plan, the participant could elect to receive retirement benefits." 29 U.S.C. § 1055(h)(3). While a participant may retire upon attaining a plan's earliest retirement age, he or she would likely receive a lower benefit payment than the fully "accrued benefit" he would have received had he retired having attained the "normal retirement age." *See, e.g.*, *id.* § 1002(23)(A). And the term "normal retirement age" means the earlier of "the time a plan participant attains normal retirement age under the plan," or the later of "the time a plan participant attains age 65" or "the 5th anniversary of the time a plan participant commenced participation in the plan." *Id.* § 1002(24).

(a QPSA "starts payments to the spouse if the participant dies *before* retiring" (emphasis in original)). And the second case is when a participant dies "on or before" the date of attaining his earliest retirement age but without having retired. *Id.* § 1055(e)(1)(A)(ii); *see also Drummond*, 177 F.4th at 1083.

The "statutory object" of the QJSA provisions is to "ensure a stream of income to surviving spouses." *Boggs*, 520 U.S. at 843. Importantly, the "QJSA" must be the "actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. § 1055(d)(1)(B). Like a QJSA, a QOSA must be the "actuarial equivalent" of an SLA. *Id.* § 1055(d)(2)(A)(ii). And a QPSA must be actuarially equivalent to the survivor annuity component of the QJSA that a surviving spouse would have received. *Id.* § 1055(e)(1)(A).

The Sixth Circuit addressed § 1055(d)'s actuarial equivalence requirement in detail. *See Reichert*, 170 F.4th at 480–87. The majority opinion first noted courts' obligation to interpret a statute by applying the "ordinary public meaning of its terms at the time of its enactment." *Id.* at 480 (citing *Bostock v. Clayton County*, 590 U.S. 644, 654 (2020)). Courts must look to the language and its "specific context" and, if the text "proves unclear," consider its "broader context, structure, and purpose." *Id.* (citing *United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021)).

Applying these principles, the majority clarified the common use of the term "actuarial equivalent" at the time of ERISA's enactment in 1974. *Id.* Even before ERISA's enactment, actuarial scientists understood benefits' values to be actuarially equivalent if their present values were equal after adjusting for "actuarial assumptions, such as mortality rates." *See id.* at 481.

Actuarial equivalence is a critical concept when a participant seeks to switch to a different kind of defined pension benefit. Say that a participant wished to convert his SLA into a

"reduced pension[]" such as a QJSA.[4] *See Reichert*, 170 F.4th at 481. Plan administrators (here, FedEx and the Investment Board[5]) must, under § 1055(d)(1)(B), offer a QJSA that is actuarially equivalent to the SLA. *Id.* And in *Reichert*, the Sixth Circuit reasoned that an SLA and a QJSA are actuarially equivalent if their present values are equal after adjustments based on "appropriate mortality tables." *Id.* at 481 (emphasis removed) (citation modified). After all, actuaries' work involves "perform[ing] calculations and mak[ing] predictions based on real-world conditions," so proper valuation depends on "assumptions which at the time of the valuation seem to be most appropriate for the case at hand." *Id.* at 482 (citation modified).

To that end, the majority reasoned that the "present value of the QJSA must be equal to the present value of the SLA that such participant would otherwise receive over the course of his or her lifetime." *Id.*; *see also* 29 U.S.C. § 1055(d)(1)(B) (requiring a QJSA that is the "actuarial equivalent of a single annuity *for the life of the participant*" (emphasis added)). And to achieve equivalence, the conversion from SLA to QJSA must "reasonably reflect the 'life of the participant' who would otherwise receive the SLA." *Reichert*, 170 F.4th at 482 (citation modified).

The Sixth Circuit thus concluded that Plaintiffs stated a viable claim for a violation of § 1055's actuarial equivalence requirement by alleging that the JSAs that Defendant offered married participants had "lower present values than the SLAs that these participants would

[4] As the Sixth Circuit clarified, a QJSA is a reduced pension in that it provides a "lower monthly payment" than an SLA. *Id.* at 476. That is not because the aggregate value of a QJSA is lower than the aggregate value of an SLA. On the contrary, their values must be actuarially equivalent. 29 U.S.C. § 1055(d)(1)(B). But a QJSA might provide smaller monthly payments because it accounts for potential future payments to a surviving spouse. Because a QJSA's aggregate value is divided into more months than the SLA's aggregate value, a QJSA's monthly payments are often smaller. *See Reichert*, 170 F.4th at 476–77.

[5] (ECF No. 33 at PageID 171.)

otherwise receive." *Id.* at 484. Indeed, Defendants allegedly based the JSAs on "seriously outdated" mortality data that does not "reasonably accord with the life expectancy of a modern-day plan participant"; and so the JSAs were not actuarially equivalent to the SLAs. *Id.*

Finally, the Court briefly explains subsection 1055(g). ERISA allows a plan to "provide that the present value of a [QJSA] or a [QPSA] will be immediately distributed if such value does not exceed the amount that can be distributed without the participant's consent under section 1053(e)." 29 U.S.C. § 1055(g). But a plan may not provide for such a distribution "after the annuity starting date" unless the participant and his or her spouse have consented in writing to that distribution. *Id.*

## II. Plaintiffs' Factual Allegations

Turning now to Defendants' Motion, this Court must "accept as true well-pleaded factual allegations" in Plaintiffs' Amended Complaint. *See White's Landing Fisheries, Inc. v. Ohio Dep't of Nat. Res., Div. of Wildlife*, 174 F.4th 493, 497 (6th Cir. 2026). So the Court will next recount Plaintiffs' relevant allegations.

The Plan is an "employee pension benefit plan" under 29 U.S.C. § 1002(2)(A) and a "defined benefit plan" under 29 U.S.C. § 1002(35). (ECF No. 33 at PageID 177.) Two appendices explain benefits at issue for FedEx's pilots: Appendix B, and Appendix D for pilots who worked for Flying Tiger Line Inc. before its merger with FedEx. (*Id.*)

Appendix B provides that participants can receive a "Normal Form of Payment," which is an "[SLA], payable monthly to the Participant during his lifetime." (*Id.*) Yet the monthly payment amount differs based on when a participant retired. (*See id.*) All participants earn an "accrued benefit" based on their compensation and years of service; that benefit fully "accrue[s]"

at their "Normal Retirement Age."[6] (*Id.*) But if a participant retires early, he or she receives reduced benefits; as explained, that is because the total aggregate value of the defined pension benefit is divided over more remaining months of payment than if the participant had retired at the "Normal Retirement Age." (*See id.* at PageID 177–78.)

Appendix B also provides for the payment of a QJSA to married participants. (*Id.* at PageID 178.) The Appendix offers three kinds (50%, 75%, and 100%) and refers to each as a QJSA. (*Id.*) The 50% QJSA is the default benefit for married participants. (*Id.*) It offers a surviving spouse 50% of the joint lives component and governs the QPSA paid to a surviving spouse if the participant dies before receiving benefits. (*Id.*) The 75% and 100% QJSAs respectively offer a surviving spouse 75% and 100% of the joint lives component. (*Id.*) The Plan defines each of these as QJSAs, not QOSAs. (*See id.*)

Appendix D provides the formula to fix benefits for participants whom Flying Tiger Line Inc. employed before its merger with FedEx. (*Id.* at PageID 179.) This Appendix refers in part to "Group II Tiger Plans," the plans under which "pilots employed by Flying Tiger Line, Inc. earned benefits." (*Id.*) For pilots who participated in "Group II Tiger Plans," Appendix D offers a "50% QJSA without adjustment for the cost of the survivor portion." (*Id.* (citation modified).)

On Plaintiffs' account, the Plan's QJSAs for pilots failed to satisfy ERISA's actuarial equivalence requirements. (*Id.* at PageID 180.) Plaintiffs explain that calculating QJSAs' present values depends on interest or "discount" rates and the applicable mortality tables applied to participants and beneficiaries. (*Id.*) And they note that the "economic assumption[s]" underlying these figures must be "reasonable." (*Id.* at PageID 181.)

---

[6] For benefits earned before February 1, 2026, the "Normal Retirement Age" is 60; for benefits earned after that date, it is 62. (ECF No. 33 at PageID 177.)

Plaintiffs then emphasize that Defendants' selected interest rate and outdated mortality tables do not "produce QJSAs that are actuarially equivalent to the SLA[s] offered to participants when they commence benefits under the Plan because the present values of the QJSAs are lower than the present values of the SLAs." (*Id.* at PageID 183.) Nor do Defendants' calculations "produce QPSAs that meet ERISA's actuarial equivalence requirements." (*Id.* at PageID 183–84.) Plaintiffs also note that the assumptions yield "benefits that are not actuarially equivalent to the amount of the SLA benefit"; and this, they allege, holds true for participants regardless of their age, when benefits started, or whether they receive 50%, 75%, or 100% QJSAs under the Plan. (*Id.* at PageID 184.)

Indeed, "[w]hile the amount of the loss suffered will vary" based on these characteristics, "all participants receiving . . . JSAs under the Plan are not receiving actuarially equivalent forms of benefit" because the present values for those benefits are "not equal to the *present values of the SLAs they could have taken at the times they retired*." (*Id.* at PageID 185–86 (emphasis added).) At bottom, then, Defendants are "causing participants to receive lower monthly payments than they should be receiving." (*Id.* at PageID 186.)

At age 65, Plaintiff Craig A. Covic began receiving benefits under a 50% JSA. (*Id.* at PageID 190.) Had Defendants calculated his benefits using Treasury Assumptions,[7] "his monthly benefit" would have increased by $393.99 per month. (*Id.*) As for Plaintiff Robert A. Watt, he began receiving benefits under a 100% JSA at age 64. (*Id.* at PageID 191.) Under

[7] Plaintiffs note that Reorganization Plan No. 4 of 1978 "transferred authority to the Secretary of the Treasury to issue regulations for several provisions of ERISA." (ECF No. 33 at PageID 172.) And the Secretary promulgates regulations for the provisions of the Internal Revenue Code that correspond to ERISA. (*Id.* at PageID 173.) These regulations include a "Treasury Mortality Table" and a "Treasury Interest Rate"; collectively, these are the "Treasury Assumptions" that Plaintiffs discuss. (*Id.*)

Plaintiffs' preferred calculation, he would have received $685.94 more each month. (*Id.*) Watt also earned a benefit under the Flying Tigers component; that benefit is a 100% JSA that pays him $199.82 per month. (*Id.*) Yet he would have earned $24.97 more each month given Plaintiffs' assumptions. (*Id.*)

Plaintiffs give three more examples. Plaintiff Gary J. Friesen began receiving benefits under a 100% JSA at age 61 and would have received $468.44 more per month. (*Id.*) Plaintiff Michael H. McKenna started receiving benefits under a 50% JSA at age 66 and would have received $381.55 more each month. (*Id.* at PageID 192.) And finally, Plaintiff Geoffrey B. Coe began receiving benefits under a 100% JSA at age 66 and would have received $181.42 more each month. (*Id.*) In sum, Plaintiffs' central allegation was that "Defendants failed to provide JSAs that were actuarially equivalent to the SLA that participants were entitled to receive when they retired" under 29 U.S.C. § 1055(d). (*Id.* at PageID 192.)

With that in mind, Plaintiffs asserted one claim for declaratory and equitable relief largely based on 29 U.S.C. §§ 1055. (*Id.* at PageID 195.) They allege that Defendants "improperly reduced JSAs for participants and beneficiaries of the Plan below the amounts that they would have received if those benefits were actuarially equivalent to an SLA" in violation of section 1055. (*Id.*) They request "re-calculation, correction, and payment of QJSA and QPSA benefits previously paid under the Plan," an "accounting" of all prior benefits and payments," and other forms of relief. (*Id.* at PageID 196 (citation modified).)

Plaintiffs also claim that FedEx and the Investment Board breached their fiduciary duties under ERISA. (*Id.*) For these violations, Plaintiffs seek declaratory relief over the Plan's "established methodologies for calculating QJSAs and QPSAs" and a "full range of equitable relief." (*Id.* at PageID 199.)

### III. Procedural History Before and After *Reichert v. Kellogg Co.*

Plaintiffs sued Defendants in September 2023. (ECF No. 1 at PageID 3.) And in November 2023, they filed their Amended Complaint. (ECF No. 33.) This Court granted Defendants' first Motion to Dismiss. (ECF No. 66 at PageID 870, 876.)

In fact, the Court dismissed Plaintiffs' claims on one ground: that they failed to allege that Defendants' use of the "UP-84 mortality table," based on data from the 1970s, violated ERISA's "actuarial equivalence requirement." (*Id.*) Given this failure, the Court reasoned, Plaintiffs failed to state an ERISA violation. (*Id.* at PageID 876–77.) And because Plaintiffs' fiduciary duty claim was "dependent on the alleged violation of ERISA," they also failed to state a fiduciary duty claim. (*Id.*)

Plaintiffs timely appealed. (ECF No. 68 at PageID 879.) And on March 16, 2026, the Sixth Circuit reversed the Court's Judgment. (ECF No. 72 at PageID 909.) As explained above, the majority held that "§ 1055(d) prohibits employers from using unreasonable, inappropriate actuarial assumptions when calculating" qualified joint and survivor annuities.[8] *Reichert*, 170 F.4th at 487.

But the majority did not evaluate FedEx's "two additional grounds for dismissal" of Plaintiffs' claims because the Order Granting Defendants' Motion to Dismiss had not considered those issues. *Id.* at 487–88; *see also Maldonado*, 73 F.3d at 648.

Defendants then filed a Renewed Motion to Dismiss. (ECF No. 79.) The upshot of the Renewed Motion is that, despite *Reichert*, Plaintiffs still fail to allege the receipt of insufficient benefits and therefore did not plead any violations of ERISA. (ECF No. 79-1 at PageID 948–

[8] The Court explains these and other defined pension benefits below.

49.) Plaintiffs responded to Defendants' Motion and Defendants then replied. (ECF Nos. 84, 85.)

Defendants separately moved the Court to stay discovery until its adjudication of the Renewed Motion to Dismiss. (ECF No. 80.) Plaintiffs opposed Defendants' Motion to Stay. (ECF No. 83.) The Court denied the Motion to Stay. (ECF No. 87.)

Below, the Court addresses Defendants' Renewed Motion to Dismiss. (ECF No. 79.)

## LEGAL STANDARD

To survive a motion to dismiss based on Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is facially plausible if the plaintiff has pleaded enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must construe the Amended Complaint's allegations "in the light most favorable to the plaintiff." *Mattei v. Mattei*, 126 F.3d 794, 797 (6th Cir. 1997). So must the Court "treat as true" its "well-pleaded allegations." *Id.* "In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." *Id.* (citation modified).

## ANALYSIS

The Court first explains that Plaintiffs sufficiently alleged that Defendants violated subsection 1055(d)(1)'s actuarial equivalence requirement. Second, the Court concludes that it cannot dismiss Watt's, Friesen's, and Coe's claims: the Plan's 100% QJSA is still subject to subsection 1055(d)(1)'s actuarial equivalence requirement. And third, the Court determines that

Plaintiffs' derivative fiduciary duty claims also survive Defendants' Renewed Motion to Dismiss. So for the reasons below, the Court **DENIES** Defendants' Motion.

## I. Motion to Dismiss

### A. Plaintiffs Stated Actuarial Equivalence Claims Because They Alleged the Receipt of Less Than The "Actuarial Equivalent" of Their "Accrued Benefit"

Defendants' first argument is that Plaintiffs failed to plead a violation of 29 U.S.C. § 1055(d) because they did not show that the benefits they received were less than the "actuarial equivalent" of their "accrued benefits." (ECF No. 79-1 at PageID 948 (citation modified).) In Defendants' view, Plaintiffs claimed only that the "JSAs they are receiving now are less than the actuarial equivalent of the SLA[s] they could have selected at their *benefit commencement date*—even if that was earlier or later than the Plan's 'normal retirement age.'" (*Id.* (emphasis in original).) Defendants suggest that, based on the Amended Complaint, "*no* Plaintiff commenced their benefits at 'normal retirement age,'" so Plaintiffs failed to allege that their monthly benefits fall short of their statutory "accrued benefit." (*Id.* at PageID 952 (emphasis in original).)

Defendants also try to undermine Plaintiffs' reliance on § 1055(g). (*See id.* at PageID 953; *see also* 29 U.S.C. § 1055(g)(1) ("A plan may provide that the present value of a *qualified joint and survivor annuity* . . . will be immediately distributed" (emphasis added).) Defendants stress that lump-sum distributions must be the "present value of the QJSA, and that calculation is based on the participant's 'accrued benefit,'" or the "benefit payable at normal retirement age." (*Id.* at PageID 954 (emphases removed).) Put simply, Defendants claim that under § 1055(g), a lump sum must be the QJSA's present value, which is actuarially equivalent to the accrued benefit at "normal retirement age," not to some benefit that a participant could receive before or after the "normal retirement age." (*Id.*)

Plaintiffs counter that they alleged the receipt of benefits *after* reaching the Plan's

Normal Retirement. (ECF No. 84 at PageID 1741.) And under the Plan, they could therefore receive "higher SLA amounts compared to the amounts they would have received at age 60," likely because the benefit's total value could be divided over fewer months than if they had retired earlier at age 60. (*See id.* at PageID 1744.) So those "higher SLA amounts" were the "accrued benefits" "payable to" Plaintiffs when they began receiving benefits several years after attaining the Normal Retirement Age. (*Id.*; *see also id.* at PageID 1747.) And because Defendants used outdated actuarial assumptions, the amounts it paid to Plaintiffs under their QJSAs were not "actuarially equivalent" to the "higher SLA amounts" they should have received. (*See id.* at PageID 1747.) Plaintiffs claim that these allegations suffice to state a claim. (*Id.*)

The Court agrees with Plaintiffs because they properly stated a claim for a violation of 29 U.S.C. § 1055(d)(1)(B)'s actuarial equivalence requirement. First, Plaintiffs alleged that Defendants' use of outdated actuarial assumptions caused Plaintiffs "to *receive less than they should* in pension benefits each month" under their QJSAs; so, Defendants failed to provide them with QJSAs that were the actuarial equivalent of their SLAs. (ECF No. 33 at PageID 166, 168, 175–76, 186 (emphasis added); *see* 29 U.S.C. § 1055(d)(1)(B) (a QJSA is an annuity "which is the actuarial equivalent of [an SLA] for the life of the participant").)

And second, Plaintiffs stated a claim because they pleaded with specificity the numerical difference between the QJSAs they received and the SLA-equivalent QJSAs they should have received as employees who reach retired after the Normal Retirement Age. (ECF No. 33 at PageID 190–93.) The Court rejects Defendants' contention that Plaintiffs must have compared the QJSAs they received and "their accrued benefits" as Defendants prefer to define that term: "the amount of their SLAs *at normal retirement age*." (*See* ECF No. 79-1 at PageID 948

(emphasis added).) The Court explains each of these conclusions in turn.

First, Plaintiffs sufficiently pleaded a violation of § 1055(d)(1)(B)[9] because they alleged that Defendants used outdated actuarial assumption and an improper interest rate to provide a JSA that is not the "actuarial equivalent of [an SLA]" and is thus not a QJSA. (*Compare* ECF No. 33 at PageID 186, 190–92, *with* 29 U.S.C. § 1055(d)(1)(B).) So Plaintiffs sufficiently alleged that Defendants violated § 1055(a)(1) by failing to pay Plaintiffs the actuarially equivalent QJSAs payable to them. (*Compare* ECF No. 33 at PageID 176, 183–87, *with* 29 U.S.C. § 1055(a)(1).)

Indeed, Plaintiffs specifically alleged that Covic, Watt, Friesen, McKenna, and Coe had each started to receive benefits after they reached the Normal Retirement Age under the Plan. (ECF No. 33 at PageID 190–92.) And they explained in detail that "Defendants used antiquated and unreasonable actuarial assumptions[] to undervalue JSA benefits"; and that, "[h]ad the Plan used reasonable actuarial assumptions," "Plaintiffs and the Class would have received, and would continue to receive, actuarially equivalent benefits that are greater than the benefits they currently receive." (*Id.* at PageID 190.) Plaintiffs even identified the larger monthly benefit amounts that they would have received had Defendants used reasonable actuarial assumptions. (*Id.* at PageID 190–92.)

[9] Defendants note that § 1055(d)(1) "merely defines the term[] [QJSA]," so a Plan cannot "violate[]" that subsection. (ECF No. 79-1 at PageID 948–49.) They prefer to treat Plaintiffs' claim as one alleging a violation of "a participant's '*accrued benefit*,'" which "must be provided in the form of a QJSA in certain circumstances." (*Id.* at PageID 949.) But the Sixth Circuit has already spoken in terms of the "violation of ERISA's actuarial equivalence requirement" for good reason. *See Reichert*, 170 F.4th at 475. A plan cannot satisfy § 1055(a)(1)'s instruction to provide a participant "the accrued benefit payable to" him "in the form of a [QJSA]" if the plan pays him a benefit that is not a QJSA under § 1055(d)(1)(B). So in cases like this one where § 1055(a)(1) applies, Plaintiffs would allege noncompliance with § 1055(a)(1)'s requirement by alleging the provision of a benefit that is not a proper QJSA under § 1055(d)(1)(B).

As the majority in *Reichert* did, the Court concludes Plaintiffs have sufficiently pleaded that "the JSAs offered by Defendants to married participants have *lower present values than the SLAs that these participants would otherwise receive*, meaning none of the JSAs offered by Defendants meet § 1055(d)'s actuarial equivalence requirement." *See Reichert*, 170 F.4th at 484 (emphasis added).

But Defendants now argue that Plaintiffs have not stated an actuarial equivalence claim because they failed to compare the JSAs they received to the "actuarial equivalent" of their "accrued benefits." (ECF No. 79-1 at PageID 948 (citation modified).) Defendants contend that, to allege a violation of § 1055(d), Plaintiffs must have compared the JSAs they received to the actuarial equivalent of their "accrued benefits," or the SLAs available to them at the Normal Retirement Age. (*Id.*)

The Court will try to clarify Defendants' argument. For starters, subsection 1055(a)(1) requires plans to provide vested participants "the accrued benefit[s] payable to" them "in the form of a [QJSA]." 29 U.S.C. § 1055(a)(1). Defendants assert the term "accrued benefit" is limited to an amount "expressed" *only* "in the form of an annual benefit commencing at retirement age." (*E.g.*, ECF No. 79-1 at PageID 943 (emphasis removed).) So they argue that Plaintiffs failed to state an actuarial equivalence claim because they did not compare their JSAs to their "accrued benefit" (as an amount "in the form of an annual benefit commencing at retirement age"). (*Id.* (emphasis removed).) Instead, they claim, Plaintiffs compared their JSAs to the SLAs they should have received at their ages of retirement after Normal Retirement Age. (ECF No. 79-1 at PageID 944.)

The Court concludes that Plaintiffs properly compared their QJSAs' value to the value of "accrued benefits" they should have received upon retirement after the normal retirement age.

(ECF No. 33 at PageID 190–93.) Reading the term "accrued benefit" too narrowly, Defendants ask the Court to heighten the requirements for claims based on § 1055(d)(1)(B) and (a)(1). (*See* ECF No. 79-1 at PageID 943–44.) But the Court finds that the term "accrued benefit" has a broader reach than Defendants claim. *See* 29 U.S.C. §§ 1002(23), 1054(c)(3). ERISA provides expressly for the calculation of "accrued benefits" at times other than the Normal Retirement Age, so Plaintiffs permissibly compared the QJSAs they received after age 60 to the "accrued benefits" they should have received at that time. *See id.* §§ 1055(a)(1), 1054(c)(3).

Defendants correctly note that § 1055(a)(1) may require a pension plan to provide a vested participant an "accrued benefit . . . in the form of a [QJSA]." (ECF No. 79-1 at PageID 949 (citation modified).) On this basis, they claim that Plaintiffs did not allege a violation of § 1055(a)(1) when they alleged the receipt of JSAs lower than the QJSAs to which they were entitled at their post-Normal Retirement Ages, rather than the receipt of JSAs lower than the "accrued benefit[s] payable to" them. (*See id.*) To support this assertion, Defendants state that the term "accrued benefit" *must* be "expressed in the form of an annual benefit commencing at normal retirement age." (*See id.* (citing 29 U.S.C. § 1002(23)(A) (defining "accrued benefit")).)

But Defendants overlook a critical part of the definition of "accrued benefit." An "accrued benefit" is "the individual's accrued benefit determined under the plan and, *except as provided in section 1054(c)(3) of this title*, expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A) (emphasis added). Section 1054(c) defines an employee's "accrued benefits derived from employer and employee contributions": "[I]n the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit or amount

determined under paragraph (1) or (2)." *Id.* § 1054(c)(3).

Reading sections 1002(23) and 1054(c) together, the Court understands the term "accrued benefit" to include an "amount other than an annual benefit commencing at normal retirement age," including the amount payable to participants who, like Plaintiffs, retire *after* the Normal Retirement Age. (*See id.* §§ 1002(23), 1054(c); *see also* ECF No. 33 at PageID 190–92.) Plaintiffs thus correctly compared the value of the QJSAs they received to the value of the "accrued benefits" they should have received upon their annuity starting dates rather than to the value they could have received at normal retirement age. (ECF No. 33 at PageID 190–93.)

While the Sixth Circuit has not addressed this exact issue, several decisions from the Sixth Circuit and its sister circuits support the Court's interpretation. In *West v. AK Steel Corp.*, the Sixth Circuit adopted the Second Circuit's understanding that an "accrued benefit under a defined benefit plan" may be "paid at any" time other than "normal retirement age," and if it is, it "must be worth at least as much as" the annuity it would "yield at normal retirement age." *West v. AK Steel Corp.*, 484 F.3d 395, 407 (6th Cir. 2007) (emphasis removed) (citation modified). Under our circuit's law, accrued benefits are calculable upon retirement *after* the normal retirement age; and that calculation must satisfy the actuarial equivalence requirement. *Id.* And the Third Circuit has reasoned that the term "accrued benefits" "imparts a specific meaning to the word accrued, *connoting a set periodic increase or accumulation*," so plans must provide a formula" to calculate "each participant's actual accrued benefit . . . *in each plan year*." *Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan*, 854 F.2d 1516, 1523–24 (3d Cir. 1988) (emphasis added) (citation modified).

The Parties also overlook other subsections that support this conclusion. Subsection 1054(b)(1)(A), for instance, notes that a "defined benefit plan satisfies" plan requirement if "the

accrued benefit to which each participant is entitled upon his separation from service is not less than . . . 3 percent *of the normal retirement benefit to which he would be entitled at the normal retirement age if he commenced participation at the earliest possible entry age*" and satisfied other conditions. *Id.* § 1054(b)(1)(A) (emphasis added). ERISA thus refers to "accrued benefit[s]" as entitlements that, though calculated relative to the "normal retirement benefit," need not be expressed *only* as the SLAs payable to participants who retire at Normal Retirement Age.[10] (*See id.*; *cf.* ECF No. 79-1 at PageID 949.)

The Court therefore rejects Defendants' claim that Plaintiffs failed to allege a violation of ERISA's actuarial equivalence requirement. Plaintiffs need not allege that the JSA benefits they received were "lower than the 'actuarial equivalent' of . . . the amount of their SLAs at normal retirement age." (*Cf.* ECF No. 79-1 at PageID 948.) They alleged that the JSA benefits they received were lower than the "accrued benefits payable" to them "in the form of a [QJSA]"; and they properly referred to those "accrued benefits" as QJSAs in an amount "other than an annual benefit commencing at normal retirement age." *See* 29 U.S.C. §§ 1055(a)(1), 1054(c)(3). An "employee's accrued benefit *at any particular point in time* is what a fully vested employee would be entitled to receive under the terms of the plan *if employment ceased at that particular point in time*." *Ashenbaugh*, 854 F.2d at 1524 (emphasis added). So Plaintiffs, have retired as "fully vested employee[s]," compared the amounts they received to the amounts they "would be entitled to receive" under the Plan's terms "at that particular point in time," that is, at their ages

---

[10] Subsection 1054(b)(1)(C) compels the same conclusion. *See id.* § 1054(b)(1)(C) (stating that a "defined benefit plan satisfies" certain plan requirements "if the accrued benefit to which any participant is entitled upon his separation" "*is not less than a fraction of the annual benefit commencing at normal retirement age to which he would be entitled under the plan* as in effect on the date of his separation if he continued to earn annually until normal retirement age the same rate of compensation upon which his normal retirement benefit would be computed under the plan" (emphasis added)).

of retirement. *See id.*

Defendants wrongly assert that this interpretation of § 1002(23)(A) "read[s] 'and' out of the statute." (ECF No. 85 at PageID 1764.) Rather the Court's interpretation gives meaning to the clause "except as provided in section 1054(c)(3)" which immediately follows the word "and," so that clause precisely limits the conjunction's effect. (*See* 29 U.S.C. § 1002(23)(A) ("the individual's accrued benefit determined under the plan *and, except as provided in section 1054(c)(3) of this title,* expressed in the form of an annual benefit commencing at normal retirement age") (emphasis added); *see also Lockhart v. United States*, 577 U.S. 347, 351 (2016) ("a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows" (citation modified)).)

Separately, Defendants resist this conclusion by relying on cases that are distinguishable from this case. The cases do not concern actuarial equivalence claims, they do not address the question of which benefits are the comparators for JSAs after the normal retirement age, nor do they refer to the "except" proviso in subsection 1002(23)(A)'s definition of an "accrued benefit." (*See* ECF No. 79-1 at PageID 949–50, 951–54.)

First, *Cattin v. General Motors Corp.* concerned defendants' alleged elimination or reduction of early retirement benefits or retirement-type subsidies; it did not concern an actuarial equivalence claim or which benefits were the proper comparators for JSAs received after the normal retirement age. *See, e.g.*, *Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 421 (6th Cir. 1992). And there, the Sixth Circuit did not explore the "except" proviso because it was not relevant. *See id.* at 422–23. And Defendants misread *West*. *See West*, 484 F.3d at 407. As explained, there the Sixth Circuit even cited the Second Circuit in *Esden*, which noted that an "accrued benefit" may be paid at a time other than "at normal retirement age" and, if it is, it "must be

worth at least as much as that annuity" as valued at "normal retirement age." *Id.* (emphasis removed) (citation modified).

*Constantino v. TRW, Inc.* also addressed the elimination of *early retirement subsidies* from retirees' lump-sum distributions under 29 U.S.C. § 1054(g)(2). *Constantino v. TRW, Inc.*, 773 F. Supp. 34, 40–41 (N.D. Ohio 1991), *aff'd in part, modified in part and remanded*, 13 F.3d 969 (6th Cir. 1994). And importantly, that court omitted the "except" proviso from its definition of an "accrued benefit." (*Id.*) And finally, the recent ruling in *Bennett v. Ecolab, Inc.* does not persuade the Court. *See Bennett v. Ecolab, Inc.*, No. 24-cv-0546 (JMB/SGE), 2026 WL 810758, at *1 (D. Minn. Mar. 24, 2026). In concluding that an "accrued benefit is . . . the amount of pension payment a recipient achieves at normal retirement age," that District Court did not consider the "except" clause in subsection 1002(23)(A). *Id.* at *1–3.

Defendants also rely on the Second Circuit's decision in *Esden*, which analyzes subsection 1054(c)(3). (*Esden*, 229 F.3d at 163; *see also* ECF No. 79-1 at PageID 949–50.) As noted above, that court recognized that an "[accrued] benefit" paid at "any" time other than the "normal retirement age" must be worth "at least as much as" the accrued benefit would have yielded "at normal retirement age." (*Id.*) Again, the Sixth Circuit in *West* and other circuits have recognized as much. *West*, 484 F.3d at 407; *see also Am. Stores Co. v. Am. Stores Co. Ret. Plan*, 928 F.2d 986, 990 (10th Cir. 1991) (explaining that subsection 1054(c)(3) "enables one to calculate an employee's accrued benefit in those cases where the benefits . . . are not commenced at a normal retirement age by calculating the 'actuarial equivalent of such benefit" (citation modified)).

And reading subsection 1054(c)(3) this way makes sense. *See Am. Stores Co.*, 928 F.2d at 990. These calculations are necessary because an "accrued benefit" determined before or after

a participant has reached normal retirement age need not be, and usually will not be, numerically equal to the "accrued benefit" that participant would have received upon retirement at the normal retirement age.[11] (*See, e.g.*, 29 U.S.C. § 1054(b)(1)(A)(i); *Esden*, 229 F.3d at 163; ECF No. 84 at PageID 1744.)

Defendants also rely on these cases to assert that the calculation of lump sums under § 1055(g) confirms the need to look only to the "normal retirement age annuity to which a participant would be entitled." (*See* ECF No. 79-1 at PageID 953 (emphasis removed); *see also* 29 U.S.C. § 1055(g)(1) ("A plan may provide that the present value of a *qualified joint and survivor annuity* . . . will be immediately distributed" (emphasis added).) But again these cases do not address the issue here. For example, the Sixth Circuit in *West* did not analyze the proper comparator for a plaintiff's actuarial equivalence claim or the "except" proviso. *West*, 484 F.3d at 400–02, 405. And in its discussion of lump-sum calculations, it expressly recognized that benefits may be "paid at any other time or in another form" so long as they are "worth at least as

[11] Defendants state that a "benefit at other times, "*like a subsidized early or late benefit*," is "*not* the 'accrued benefit,' even under § 1054(c)(3)," because an "accrued benefit determined at other times still must be the actuarial equivalent of the benefit *at* normal retirement age." (ECF No. 85 at PageID 1764 (emphasis in original) (citation modified).) Recall that Plaintiffs allege that each participant retired after attaining the Normal Retirement Age. (ECF No. 33 at PageID 190–92.) So "subsidized early . . . benefit[s]" are irrelevant here because Plaintiffs did not retire early. (*Cf.* ECF No. 85 at PageID 1764; ECF No. 79-1 at PageID 950–51.) And it is unclear why Defendants even discuss "subsidized . . . late benefit[s]." (*See* ECF No. 85 at PageID 1764.)

In any case, Defendants suggest that Plaintiffs should compare their received JSAs' value to "their accrued benefit at normal retirement age" rather than to "any early or late subsidized benefit offered at the same time." (*See, e.g.*, *id.* at PageID 1765.) But nowhere in Plaintiffs' Amended Complaint do they allege or imply that Defendants deprived them of late *subsidized* benefits. (*See generally* ECF No. 33 at PageID 163–201.) Rather, as Plaintiffs note, if a participant begins to receive benefits "*after* age 60 (late retirement)," the Plan "increas[es] . . . the SLA that is payable on the participant's annuity starting date." (ECF No. 84 at PageID 1744 (emphasis in original).) That is not because the participant receives a "late subsidized benefit"; it is because the participant is entitled to the same aggregate value of benefit and, because he retired later than at age 60, that total is divided over fewer total months. In short, the resulting monthly quotient is larger.

much as" the annuity's value had it been paid at Normal Retirement Age. *Id.* at 409 (citation modified). Such a conclusion makes sense, as an "accrued benefit" "represents the interest in a retirement benefit that a participant earns *each year*, and a plan must state a method of formula for determining a participant's annual accrual rate." *Ashenbaugh*, 854 F.2d at 1524 (emphasis added).

In sum, Plaintiffs stated a claim based on Defendants' alleged violation of ERISA's actuarial equivalence requirement because they alleged that they received JSAs lower than the "actuarial equivalent" of the SLAs they should have received, and therefore not the "accrued benefit[s] payable to" them "in the form of" QJSAs. 29 U.S.C. § 1055(d)(1)(B), (a)(1). Plaintiffs could permissibly compare the JSAs they received to the SLAs they could have selected upon starting to receive benefits after attaining the Normal Retirement Age. Those SLAs qualify as "accrued benefit[s]" under the statute because an "accrued benefit" may be determined "as an amount other than an annual benefit commencing at normal retirement age." *Id.* §§ 1002(23)(A), 1054(c)(3).

The Court finds unpersuasive Defendants' argument that Plaintiffs can state an actuarial equivalence claim only after alleging that the benefits they received were not "actuarially equivalent" to the SLAs they could have selected upon attaining the Normal Retirement Age. Next, the Court considers Defendants' argument about the applicability of 29 U.S.C. § 1055 to Watt's, Friesen's, and Coe's optional JSA benefits.

### B. Watt, Friesen, and Coe Stated Actuarial Equivalence Claims Based on Their 100% QJSAs Because § 1055(d) Applies to Those Benefits

Defendants argue that even if Plaintiffs sufficiently pleaded a violation of ERISA's actuarial equivalence requirement, the Court should still dismiss Watt's, Friesen's, and Coe's claims because they did not "elect a benefit to which § 1055(d) applies." (ECF No. 79-1 at

PageID 955.) According to Defendants, ERISA requires plans to "designate one JSA to constitute the QJSA, so long as it is at least a 50% JSA and not greater than a 100% JSA." (*Id.*) Still the "designated JSA—the QJSA under ERISA—must be the actuarial equivalent of the accrued benefit, as discussed." (*Id.* (citation modified).) Among the JSAs that "*could* satisfy the statutory definition of the QJSA," only one can qualify as "the QJSA." (*Id.* (emphasis in original) (citation modified).) And here, the Plan "designates the 50% JSA as the QJSA." (*Id.* at PageID 956.)

First, Defendants cite subsection 1055(d)(1). As explained, that subsection defines a QJSA as "an annuity—(A) for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of (and is not greater than 100 percent of) the amount of the annuity which is payable during the joint lives of the participant and the spouse, and (B) which is the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. § 1055(d)(1). Because the definition states "an annuity," Defendants refer to QJSAs as if a plan can have only one or, as they put it, "*the* QJSA under ERISA." (ECF No. 79-1 at PageID 955 (emphasis added).)

That argument rests on a thin reed. Defendants ask the Court to infer too much from Congress's choice to define a pension benefit using the article "an." (*See id.*) Nothing about Congress's choice to define a term using "a" or "an" rather than using the term in its plural form compels the conclusion that a plan can have only one QJSA. *See* 29 U.S.C. § 1055(d)(1).

What is more, subsection 1055(d)(1)'s definition of a QJSA undermines Defendants' position because Watt's, Friesen's, and Coe's 100% QJSA benefits comfortably satisfy it. *See* 29 U.S.C. § 1055(d)(1). That subsection captures 100% QJSA benefits and it "does not state that ERISA protects only those individuals who elect a designated default or automatic form of

JSA benefit under a plan." *Masten v. Metro. Life Ins. Co.*, No. 18 CIV. 11229 (DEH), 2024 WL 4350909, at *9 (S.D.N.Y. Sept. 30, 2024). Nor does it "prevent a plan from offering additional QJSAs that a participant can select, as the Plan" has done here. *Id.*

Defendants separately claim that the Plan designated the 50% JSA as the "default option and designated QJSA," the "75% JSA is the QOSA as a matter of law" under § 1055(d)(2), and the 100% JSA is thus "neither the QJSA nor the QOSA." (ECF No. 79-1 at PageID 956–57.) So, according to Defendants, non-QJSA and non-QOSA benefits are "not subject to the 'actuarial equivalent' requirement in § 1055(a) and (d)." (*Id.* at PageID 957.) But just because the Plan designated "one option as the default does not change the fact that a plan can have more than one QJSA." *Masten*, 2024 WL 4350909, at *9.

And while Defendants point to the subsections that prescribe for a QOSA the "applicable percentage of the amount of the annuity which is payable during the joint lives of the participant and the spouse" based on a QJSA's "survivor annuity percentage," that language taken alone still does not forbid plans from offering multiple types of QJSAs and corresponding QOSAs. *See* 29 U.S.C. § 1055(d)(2)(A)(i), (d)(2)(B). What is more, "if Defendants' narrow interpretation of the statute were correct, then a participant who elects a plan other than the default benefit option would be at risk of losing ERISA protections." *See Masten*, 2024 WL 4350909, at *9.

The Plan's 100% QJSA is still a QJSA subject to subsection 1055(d)(1)'s actuarial equivalence requirement. The Court therefore declines to dismiss Watt's, Friesen's, and Coe's claims.

**C. Plaintiffs Stated Breach of Fiduciary Duty Claims Against Defendants**

The Court next evaluates whether Plaintiffs stated claims for breach of fiduciary duty against Defendants. At the outset, Plaintiffs correctly note that "ERISA charges fiduciaries with

among the highest duties known to law." (ECF No. 33 at PageID 197; *accord Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 213 (6th Cir. 2024).) Plaintiffs then alleged that FedEx, the Investment Board, and its members are fiduciaries because they exercised discretionary authority over the Plan, and that Defendants breached their fiduciary duties by "directing the administration of the Plan in violation of ERISA." (*Id.* at PageID 196–98.)

Plaintiffs seek declaratory relief as to the Plan's "established methodologies for calculating QJSAs and QPSAs" and a "full range of equitable relief." (*Id.* at PageID 199.) Defendants argue that these allegations do not suffice. (ECF No. 79-1 at PageID 958–61.) Yet they do not explain why the Court, having rejected Defendants' alternative bases for dismissal, should revisit the Sixth Circuit's conclusion that Plaintiffs have "stated plausible claims for violation of § 1055 and breach of fiduciary duty under ERISA." (*See Reichert*, 170 F.4th at 484; *see also* ECF No. 79-1 at PageID 958–61.)

Under ERISA, "as in trust law, fiduciaries are charged with protecting the interests of, and managing the money owed to, plan participants and their beneficiaries." *Reichert*, 170 F.4th at 476. Fiduciaries "must discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *Reichert*, 170 F.4th at 476; *see also* 29 U.S.C. § 1104(a)(1).

And ERISA imposes liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter." 29 U.S.C. § 1109. To state a breach of fiduciary duty claim, Plaintiffs had to allege that the Plan is governed by ERISA, Defendants were fiduciaries of the Plan, and Defendants breached their duties under the statute. *See Ford v. Owens-Illinois, Inc.*, 961 F. Supp. 2d 857, 871 (N.D. Ohio 2012); *see also Franklin v. Duke Univ.*, 1:23-cv-833, 2024 WL 1740479, at *4

(M.D.N.C. Apr. 23, 2024).

With that in mind, the Sixth Circuit concluded that Plaintiffs "stated plausible claims for violation of § 1055 and breach of fiduciary duty under ERISA." *Reichert*, 170 F.4th at 484. Likewise, because Plaintiffs plausibly stated their actuarial equivalence claims against Defendants, they also stated derivative breach of fiduciary duty claims. *See id.* at 476, 484, 487. And while the Sixth Circuit instructed this Court to consider Defendants' remaining bases for dismissal, this Court has rejected those bases. *See id.* at 487–88. So just as Plaintiffs' allegations sufficed under the Sixth Circuit's de novo review to state both actuarial equivalence and breach of fiduciary duty claims, they must suffice here because this Court has rejected Defendants' remaining bases for dismissal of the actuarial equivalence claims. The Court thus reaches the same conclusion that the majority reached in *Reichert*. *See id.* at 484, 487–88.

But in any event, the Court also independently concludes that Plaintiffs did state claims for breach of fiduciary duty. First, "[f]iduciary status is the key to unlocking ERISA's civil-enforcement scheme." *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006). And Plaintiffs' allegations pass that test. Under *Briscoe*, Plaintiffs sufficiently alleged that FedEx and the Investment Board are fiduciaries of the Plan under ERISA's "functional test." (*See id.*; *see also* ECF No. 33 at PageID 196–97.) Plaintiffs alleged that the Investment Board and its members "exercised discretionary authority or control" in their management of the Plan, its assets, and its administration. (ECF No. 33 at PageID 197.) And they alleged that FedEx was "Administrator" of the Plan and exercised "discretionary authority or control" in managing the Plan, its assets, and its administration. (*Id.*)

The Court thus concludes that Plaintiffs alleged that the Investment Board, its members, and FedEx are fiduciaries: they exercised discretionary authority or control as to the Plan's

management or assets, and they had "discretionary authority" or "responsibility" in the Plan's administration. *See Briscoe*, 444 F.3d at 485–86 (citation modified). Contrary to Defendants' assertions, Plaintiffs' allegations do identify fiduciary conduct by addressing the management of the Plan and its assets. (*See* ECF No. 33 at PageID 196–98.; *cf.* ECF No. 79-1 at PageID 958.) And as the Sixth Circuit has recently held, "discretionary control or authority over plan assets is not required to give rise to ERISA fiduciary status"; "any authority or control will do." *Tiara Yachts, Inc. v. Blue Cross Blue Shield of Mich.*, 138 F.4th 457, 464 (6th Cir. 2025). Plaintiffs showed that Defendants were fiduciaries under the standard set forth by the Sixth Circuit.

As for alleging a breach of fiduciary duties, Plaintiffs specifically asserted that Defendants' application of the Plan's terms and its "unreasonable formulae" unlawfully caused participants and beneficiaries not to receive required actuarially equivalent benefits and to lose vested benefits. (ECF No. 33 at PageID 198–99.) Separately, Plaintiffs also noted that FedEx breached its fiduciary duty by failing to supervise and monitor the Investment Board and its delegates. (*Id.* at PageID 198.) These breaches allegedly caused Plaintiffs to lose "millions of dollars in vested accrued pension benefits"; Plaintiffs even identified specific amounts that they each lost. (*Id.* at PageID 199; *see also id.* at PageID 190–92.) Exercising discretionary authority over the Plan and administering it in ways that violate ERISA's actuarial equivalence requirement breach ERISA's duties of "care, skill, prudence," or "diligence." *See Reichert*, 170 F.4th at 476; *see also* 29 U.S.C. § 1104(a)(1).

The Court therefore rejects Defendants' argument that Plaintiffs' allegations do not suffice to sustain claims for breach of fiduciary duty under ERISA.

## CONCLUSION

For the reasons explained above, the Court **DENIES** the Renewed Motion to Dismiss.

**SO ORDERED**, this 15th day of October, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE